2 Broadway, Room D21.72  Darryl C. Irick
New York, NY 10004-2207  President

 **Bus Company**

March 3, 2017

Magistrate Judge Lois Bloom
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re: Court's Order to Show Cause of February 28, 2017
         <u>Brian Thrane v. Metropolitan Transportation Authority, et al</u>.
         Civil Action No. 15-cv-7418 (FB-LB)

Dear Judge Bloom:

  I respectfully attach with this letter defendants' response to your Order to Show Cause directing that Defendants' counsel submit in writing by this date good cause why defendants should not be sanctioned $250 in connection with the settlement conference scheduled on February 28, 2017.

             Respectfully submitted,

             Paige Ann Evans (PE 6148)
             General Counsel
             MTA Bus Company
             (646) 252-3754
             paige.graves@nyct.com

PG:ag
Attach.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN THRANE,<br><br>     Plaintiff,<br><br>-against-<br><br>METROPOLITAN TRANSPORTATION<br>AUTHORITY and MTA BUS COMPANY,<br><br>     Defendants. | 15-CV-7418 (FB)(LB) |

**NOTICE OF DEFENDANTS' RESPONSE
TO THE MAGISTRATE JUDGE'S
ORDER TO SHOW CAUSE**

  Defendants, METROPOLITAN TRANSPORTATION AUTHORITY and MTA BUS COMPANY, respectfully submit this writing in response to the Court's Order to Show Cause giving notice and opportunity to show good cause by March 3, 2017, why defendants should not be sanctioned $250.00 payable to plaintiff's counsel as compensation for their time in Court in connection with the settlement conference scheduled February 28, 2017. Defendants respectfully object to the imposition of sanctions for the reasons set forth herein.

# BACKGROUND

### A. The Settlement Conference Order

On January 31, 2017, this Court granted the joint request by the parties for a settlement conference. At that time, no demand had been communicated to the defendants because, it was explained, the demand at that time appeared to plaintiff's counsel to be in an amount that was not approachable for settlement. Even so, defendants stated that it was open to settlement discussions and would participate in a conference. This Court in its January 31, 2017 Order directed that at least two substantive good faith discussions regarding settlement be held by the parties and that their settlement statements setting forth the legal and factual basis for their settlement positions and their most recent best faith demands and offers be faxed to the Court by February 22, 2017, in advance of the settlement conference scheduled February 28, 2017. The Court also directed that defendants' counsel have someone with full settlement authority preferably at the Court, but if that was not possible, to have that person available by telephone throughout the conference.

### B. Pre-Conference Settlement Discussions

Pursuant to the Order, defense counsel, Thomas Deas, telephoned plaintiff's counsel, Owen Laird, on February 9, 2017. At that time, Mr. Deas explained that he had not finished reviewing all the medical records that defendants had provided him, but that he planned to do so and would contact his client to discuss the sum and substance of the case. On February 15, 2017, Mr. Deas again telephoned plaintiff's counsel, Mr. Laird, and discussed the case. Plaintiff's counsel stated that his demand was $120,000 and that, with respect to his client's claim for emotional distress, it was based on two references in the initial hospital record. Mr. Deas again requested that

Mr. Laird finalize his review of the medical records and provide any additional support for the emotional distress claim. Mr. Laird stated that he needed an offer to be made before he could go back to his client.

At this time I met with Mr. Deas. For several hours we extensively reviewed the case file, medical records, and the case law, as well as payroll records, the arbitrator's decision on plaintiff's lost earnings claim, and the disclosures made to date by all parties. It was upon this review that we realized that no evidence had been produced or offered by the plaintiff or his representatives to support his demand for $120,000. The arbitrator previously awarded plaintiff his lost earnings and the hospital records, which pre-dated any claimed violation, did not support any claim of emotional distress. After a thorough discussion with defense counsel, I decided that no offer could be made. Defendants are public benefit corporations—without more proof, how can taxpayers offer money for a case where no evidence of injury had been set forth? Mr. Deas recommended, however, that a good faith offer for the savings of avoiding the cost of future litigation could be extended (i.e., nuisance value). I concurred.

On February 21, 2017, Mr. Deas again telephoned plaintiff's counsel, asking if he had identified any additional records that could support his client's claims for emotional distress or lost earnings. Mr. Owen responded that he had not found any additional records, other than an underpayment of at least $3,000.00 in wages, proof of which he never provided. Further, the arbitrator had awarded plaintiff an amount that far exceeded the $3,000.00 difference for the period of time alleged.

At that time, Mr. Deas offered nuisance value in the amount of $2,000.00. Mr. Laird stated that he felt that amount was too low, and requested that we keep the door open for further discussions beyond the date that had been set by this Court for the submission of settlement statements. Mr. Deas agreed. No call from plaintiff's counsel was received prior to the settlement conference scheduled by this Court.

### C. Legal Standard for Sanctions

As this Court knows, Rule 16 of the Federal Rules of Civil Procedure, provide this Court with the means to impose sanctions where a party fails to appear at a pre-trial conference or fails to obey a pre-trial conference Order. Rule 16(f)(A)(C). The Court may order a party or its representative to be present to consider settlement. Rule 16(c)(1). For the imposition of sanctions, a showing of bad faith is required. Hamilton v. United States of America, 2013 LEXIS 130605 at 11 (EDNY 2013). Sanctions are not appropriate to compel parties to settle. Kothe v. Smith, 771 F2d. 667, 669 (2d Cir. 1985).

In compliance with the Court's directive, a detailed settlement statement with facts and law that clearly supported the conclusion that no offer other than nuisance value could be made based on the evidence was submitted; and defense counsel appeared before Your Honor on February 28, 2017, with full authority to settle the matter accordingly. I apologize if it was not made clear that Mr. Deas had full authority, but he did. Mr. Deas is my Deputy General Counsel and is delegated to operate in my stead when I am unavailable. It is with my sincere apology to this Court that I was unable to be contacted at the time of the conference. No bad faith was intended by my non-appearance or inability to be reached at a particular point in time. If provided the opportunity, Mr. Deas would have articulated why the amount of $2,000.00 was justified and would have considered any reasonable nuisance value counter-offer.

### D. The Evidentiary Basis for the Offer

As set forth in the defendants' settlement statement, the record evidence and chronology of events revealed no basis on which the plaintiff can support a claim of lost earnings. In sum, plaintiff, then a 60-year old, full-time passenger bus operator employed by defendant, MTA Bus Company, fell ill on April 16, 2015, and went to the

hospital, where he was admitted with complaints of two episodes of dizziness and right leg weakness. One episode had occurred while he was driving a bus. According to his hospital admission record:

> The patient states while driving a bus around 7 pm last night he lost coordination. He was unable to move his leg and step on his brakes. He also had sudden onset of dizziness with the symptoms. While walking towards his car a second episode occurred and he was instructed by his wife to come to the ED.

No psychiatric complaints were diagnosed at that time or since. Likewise, his psychological exam revealed "affect/mood appropriate." His neurological test showed positive for right leg weakness and vertigo. He was released the next day, April 17, 2015, and instructed not to return to work until he was medically cleared.

Thereafter, the plaintiff was placed on restricted duty at his full Bus Operator's rate of pay, for the period June 9, 2015, through May 24, 2016, during which he was assigned to a Cleaner position pending resolution of his medical issues. Thus, one year later, on May 24, 2016, he was returned to full duty as a Bus Operator for MTA Bus Company. He remained working there for approximately one month. On or about June 29, 2016, he filed a Workers Compensation claim[1] for a job-related motor vehicle accident and has not returned to his job since.

On July 6, 2016, the parties, represented by counsel, appeared before a third-party arbitrator, who found that plaintiff was entitled to additional pay based on collective bargaining increases that had occurred over the period he had been placed on restricted duty. His rate of pay in April 2015, was approximately $29.95. Bus Operator hourly rates of pay had increased during his restricted duty period, initially to $31.79 and, later, to $32.43. The arbitrator awarded the plaintiff the Bus Operator rate of pay increases, minus 25 percent. It is important to note that at the time of the arbitration

---

[1] This is not plaintiff's first Workers Compensation claim. According the April 2015 hospital records he has an active Workers Compensation claim from a 2008 slip and fall accident.

5

plaintiff had already commenced this lawsuit before Your Honor; and at the arbitration plaintiff was represented by different counsel (his Union representatives and the Union's lawyer).

Subsequently, on or about August 17, 2016, the plaintiff received the award check in accordance with the arbitration, and cashed it without reservation. The check was for $10,100, minus deductions. Copies of the arbitrator's decision, the employer's calculations, and check are annexed to "Defendants' First Supplemental Initial Disclosures, filed January 6, 2017, as Exhibits A, D and E, respectively (Document 24 on the Docket).

In accordance with this Court's directives, plaintiff's payroll record for the period April 20, 2015 through April 20, 2016, was exchanged with plaintiff's counsel and, additionally, for comparison purposes, his payroll records for the prior year were also exchanged—for the period April 20, 2014 through April 20, 2015, when he was employed as a full time Bus Operator. For the earlier period, he earned $75,332.32. For the period that covered his time on restricted duty, he earned $72, 234.82. The difference is $3,097.50.[2] While plaintiff claims he earned less, it must be noted that he received the arbitration award check in August 2016 for $10,100.00. Any conjecture that he might have earned even more is speculative, at best, since such overtime or "run time" pay is not guaranteed. Furthermore, that issue would have been raised before the arbitrator by plaintiff's counsel. The arbitrator evidently did not provide for such relief. In conclusion, plaintiff was made whole. He has set forth no factual predicate for his claim of lost earnings, and no record evidence supports his claim.

Substantial weight is given to arbitrator decisions. *See* <u>Cortes v. MTA New York City Transit</u>, 2014 Lexis 190277 ("[A] decision of an independent and unbiased

---

[2] Overtime pay, characterized as "run time" pay, is sometimes available to Bus Operators on the basis of seniority. It is not guaranteed. Each calendar year, on a quarterly basis, Bus Operators choose, on the basis of their seniority, which "runs" they want. Some runs can provide additional working hours and, thus, these can be viewed as more desirable than others.

arbitrator based on substantial evidence after a fair hearing . . . has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive," citing Collins v. N.Y. City Transit Authority, 305 F.3d 113, 115 (2d Cir. 2002). The Cortes court noted further that a challenge to such a determination requires the plaintiff to present "strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised." Id. (citing Collins, Id. at 119).

The plaintiff and his representatives all agreed that the findings and determination of the arbitrator would bring final resolution to this matter. Now, plaintiff, who never contested the arbitration or reserved his rights in any manner whatsoever, attempts to double-dip with this lawsuit.

As for plaintiff's emotional distress claim, plaintiff's counsel informed Mr. Deas that he had reviewed all medical records and found two that he believes support an emotional distress claim. These are annexed hereto as Exhibit B. Both are taken from plaintiff's April 17, 2015, hospital discharge. This so-called evidence of emotional distress, however *de minimis*, occurred approximately two months before plaintiff was placed on restricted duty (the alleged employer violation). While the law, cited *infra*, does not draw a bright line on what constitutes an emotional distress claim, it does make clear what kind of evidence should be considered. Plaintiff's failure to set forth any other evidence in support negates his claim for emotional distress.

To recover compensatory damages for emotional distress, the plaintiff must submit evidence of actual non-economic injury caused by his or her employer. Carey v. Piphus, 435 U.S. 247, 264 (1978). The plaintiff must establish the causal connection between the employer's alleged violation and those damages. *See e.g.*, Ruhling v. Tribune Co., 2007 Lexis 116 at *77-79 (EDNY 2007). "An award for emotional harm is warranted only if there is sufficient causal connection between the respondent's illegal actions and the complaining party's injury." The U.S. Equal Employment Opportunity

7

Commission, Enforcement Guidance: Compensatory and Punitive Damages Available under §102 of the Civil Rights Act of 1991, A.2 (citing Gore v. Turner, 563 F.2d 159, 164 (7th Cir. 1978). "The discriminatory act or conduct must be the cause of the emotional harm. The claim of emotional harm will be seriously undermined if the onset of symptoms of emotional harm *preceded* the discrimination." *Id.*[3] (emphasis added).

As the amount for emotional distress damages increases, so does the evidentiary threshold. *See* Annis v. County of Westchester, 136 F.3d 239, 249 (2d Cir. 1998)(plaintiff's "own testimony" insufficient to support damages for emotional distress where there were no physical manifestations of distress alleged and no evidence corroborating that plaintiff received counseling; noting also that plaintiff remained employed on the job. *Id.*). For a plaintiff support a claim for compensatory damages for emotional distress, the plaintiff would show psychological or family counseling, or that he or she began to take antidepressant medication which caused physical symptoms such as sweating, nausea or insomnia. See e.g., Heaton v. Weitz Co., Inc., 534 F.3d 882, 891-893 (8th Cir. 2008).

What the plaintiff, Mr. Thrane, seeks to do in this case, is point to his hospital record, annexed hereto and cited, *supra*, which does not describe emotional distress, but rather a general concern about getting back to his job. Moreover, that concern *preceded* the alleged employer violation (placing him on restricted duty), which occurred approximately two months later. Moreover, there was no violation. As this Court knows, the safety of the general public is a priority that imposes the heavy burden of care on the public transportation carrier. Where there is evidence of a possible stroke lack of coordination of the bus operator's right foot, defendants are required to exercise extreme caution before permitting the operator back to full duty.

---

[3] Plaintiff's counsel relies on the April 16, 2015, hospital record to establish his client's emotional distress claim. At that point, plaintiff had taken himself directly to the hospital for his physical complaints. He was placed on restricted duty June 9, 2015, nearly two months later.

## CONCLUSION

Defendants respectfully object to the imposition of sanctions for the reasons set forth above. Defendants initiated each and every call to plaintiff's office to discuss settlement, and in good faith sought from plaintiff any evidence that could possibly support a settlement offer prior to the date of the settlement conference. These efforts were to no avail. In compliance with the Court's directive, defendants submitted a detailed settlement statement was prepared and authorized to negotiate a reasonable settlement. No bad faith was intended by my non-appearance, as Mr. Deas had full authority to settle the matter.

Dated:  March 3, 2017
        New York, New York

Respectfully submitted,

Paige Ann Evans (PE6148)