**EXHIBIT H**



1 of 1 DOCUMENT

NEW YORK CODES, RULES AND REGULATIONS

*** This document reflects those changes received from the ***
*** NY Bill Drafting Commission through March 3, 2017 ***

TITLE 15. DEPARTMENT OF MOTOR VEHICLES
CHAPTER I. REGULATIONS OF THE COMMISSIONER
SUBCHAPTER A. DRIVER LICENSING AND TRAINING
PART 6. SPECIAL REQUIREMENTS FOR BUS DRIVERS
BIENNIAL PROCEDURES FOR MOTOR CARRIERS

**Go to the New York Administrative Code Archive Directory**

*15 NYCRR § 6.10*   (2017)

§ 6.10   Physical qualifications for drivers to be considered in initial pre-employment and subsequent biennial physical examinations

   NOTE: New York State Department of Education requires all elementary and secondary school bus drivers to have an annual medical examination. Drivers must comply with all rules and regulations promulgated by such Department.

   (a) A person shall not drive a bus unless he or she is physically qualified to do so.

   (b) A person is physically qualified to drive a bus if he or she:

   (1) is certified as medically qualified pursuant to this Part. An employer may require that a driver undergo the examination required by this section upon return to work following an injury or illness which may interfere with the ability of such driver to operate and control a bus safely in conformance with his or her job duties.

   (2) has no established medical history or clinical diagnosis of diabetes mellitus or if he or she has an established medical or clinical diagnosis of diabetes mellitus which has been stabilized by insulin therapy to the degree that her or his personal physician can certify that such person has not had an incident of hyperglycemic or hypoglycemic shock for a period of two years, or since the last physical examination given pursuant to the requirements of this Part, whichever is longer. However, the employee must remain under adequate medical supervision and follow-up. The follow-up shall consist of written certification every six months by the employee's personal physician that his or her condition has remained stabilized and an incident of hyperglycemic or hypoglycemic shock has not occurred since the last certification.

   (3) has no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure. The person conducting the examination shall make this determination in accordance with the guidelines set forth in this section;

   (4) has no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with the ability to control and drive a bus safely;

   (5) has no current clinical diagnosis of high blood pressure likely to interfere with the ability to control and safely operate a bus;

   (6) has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which interferes with the ability to control and safely operate a bus;

(7) has no established medical history or clinical diagnosis of epilepsy or ==any other condition which is likely to cause loss of consciousness or any loss of ability to control and safely operate a bus==;

(8) ==has no mental, nervous, organic==, or functional disease of psychiatric disorder likely to interfere with the ability to control and safely operate a bus;

(9) (i) has distant visual acuity of at least 20/40 (Snellen) in each eye with or without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70 degrees in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green and amber:

(ii) a waiver of the vision standards of subparagraph (i) of this paragraph may be given to a bus driver, except a school bus driver, whenever such person has obtained a valid waiver of the vision standard from the Federal Highway Administration (FHWA). Such waiver shall be valid for the same period of time specified in the waiver issued by the FHWA;

(iii) The operator of a school bus subject to the regulations of the Commissioner of Education must meet all of the vision requirements as set forth in subparagraph (a) of this paragraph.

(10) first perceives a forced whispered voice in the better ear at not less than five feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz, and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA Standard) Z24.5--1951.

(11) does not use amphetamine, narcotic, or any habit-forming drug; and

(12) has no current clinical diagnosis of alcoholism.

(c) Medical examination; certificate of physical examination. Except as provided in subdivision (d) of this section, the medical examination shall be performed by a licensed doctor of medicine or osteopathy or nurse practitioner who shall not be acting as the driver's personal physician or nurse practitioner during the course of the physical examination. A physician's assistant or advanced practice nurse may conduct the physical examination if they are acting under the direction and supervision of a physician and, if applicable, in accordance with a written practice or protocol agreement. In addition, when the medical examination is performed by a physician's assistant or an advanced practice nurse, the supervising or collaborating physician must approve the findings and sign the examination report. Any laboratory examination may be conducted to determine the driver's physical qualification as required in this Part.

(d) A licensed optometrist or ophthalmologist may perform so much of the medical examination which pertains to visual acuity, field of vision, and the ability to recognize colors as specified in paragraph (9) of Section 6.10(b) of this Part.

(e) The medical examination shall be performed, and its results shall be recorded on the Examination to Determine Physical Condition of Driver under Article 19-A form (DS-874) and in accordance with the instructions provided in this section.

(1) the examining or collaborating physician or nurse practitioner must sign and date the medical examination form,

(2) the form will be returned to the physician or nurse practitioner if any item is left blank.

(f) The carrier will provide the examining physician or nurse practitioner with all forms, instructions, information, and appendices necessary to perform and evaluate the drivers' physical qualifications under Article 19-A. Such forms will be provided to the carrier by the Department of Motor Vehicles.

(g) The carrier will be responsible for ensuring that all required medical examinations, reexaminations, treatments and follow-ups as required by the physician or nurse practitioner are in compliance with the provisions of this Part.

(h) Notification in writing to the BDCU is required within 10 days when a driver has failed to pass the biennial physical examination and has completed and failed the re-examination and procedures as set forth in subdivision (b) of Section 6.15 of this Part.

INSTRUCTIONS FOR PERFORMING AND RECORDING PHYSICAL EXAMINATIONS

15 NYCRR § 6.10

The medical examiner should review these instructions before performing the physical examination. Using the examination form (DS-874) answer each question yes or no where appropriate.

The medical examiner should be aware of the rigorous physical demands and mental and emotional responsibilities placed on the driver of a bus. In the interest of public safety the medical examiner is required to certify that the driver is medically qualified.

GENERAL INFORMATION. The purpose of this history and physical examination is to certify the applicant's ability to operate a bus safely. The examination should be made carefully and be at least as complete as indicated on form DS-874.

GENERAL APPEARANCE AND DEVELOPMENT. Note marked overweight, or any defect, perceptible limp, tremor, or other defects that might be caused by alcoholism, thyroid intoxication, or other illnesses. No driver shall use a narcotic or other habit-forming drug.

HEAD-EYES. When other than the Snellen chart is used, the results of such test must be expressed in value comparable to the standard Snellen test. If the applicant wears corrective lenses, these should be worn while applicant's visual acuity is being tested. If corrective lenses are necessary, indicate on the examination form by checking the box, "Qualified only when wearing corrective lenses." In recording distance vision use 20 feet as normal. Report all vision as a fraction with 20 as numerator and the smallest types read at 20 feet as denominator. The driver must have a distant visual acuity of 20/40 (Snellen) in each eye with a field of vision of at least 70 degrees in the horizontal meridian in each eye. Note ptosis, discharge, visual fields, ocular muscle imbalance, color blindness, corneal scar, exophthalmos, or strabismus, uncorrected by corrective lenses. Monocular drivers are not qualified to operate buses. If the driver habitually wears contact lenses, or intends to do so while driving, there should be sufficient evidence to indicate that he or she has good tolerance and is well adapted to their use. The use of contact lenses should be noted on the record.

EARS. Note evidence of mastoid or middle ear disease, discharge, symptoms of aural vertigo, or Meniere's Syndrome. When recording hearing, record distance from patient at which a forced whispered voice can first be heard. If audiometer is used to test hearing, record decibel loss at 500 Hz, 1,000 Hz, and 2,000 Hz. If the driver is qualified only when wearing a hearing aid the following statement must be marked on the examination report: "Qualified only when wearing a hearing aid".

THROAT. Note evidence of disease, irremediable deformities of the throat likely to interfere with eating or breathing, or any laryngeal condition which could interfere with the safe operation of a bus.

THORAX-HEART. Stethoscopic examination is required. Note murmurs and arrhythmias, and any past or present history of cardiovascular disease, of a variety known to be accompanied by syncope, dyspnea, collapse, enlarged heart, or congestive heart failures. Electrocardiogram is required when findings so indicate.

BLOOD PRESSURE. Record with either spring or mercury column type of sphygmomanometer. If the blood pressure is consistently above 160/90 mm. Hg., further tests may be necessary to determine whether the driver is qualified to operate a bus.

LUNGS. If any lung disease is detected, state where active or arrested; if arrested, your opinion as to how long it has been quiescent.

GASTROINTESTINAL SYSTEM. Note any disease of the gastrointestinal system.

ABDOMEN. Note wounds, injuries, scars or weakness of muscles of abdominal walls sufficient to interfere with normal function. Any hernia should be noted if present. State how long and if adequately contained by truss.

ABNORMAL MASSES. If present, note location, if tender, and whether or not applicant knows how long they have been present. If the diagnosis suggests that the condition might interfere with the control and safe operation of a bus, more stringent tests must be made before the applicant can be certified.

TENDERNESS. When noted, state where most pronounced, and suspected case. If the diagnosis suggests that the condition might interfere with the control and safe operation of a bus, more stringent tests must be made before the applicant can be certified.

GENITO-URINARY. Urinalysis is required. Acute infections of the genito-urinary tract, as defined by local and State public health laws, indications from urinalysis of unstabilized diabetes, symptomatic albumin-urea in the urine, or

other findings indicative of health conditions likely to interfere with the control and safe operation of a bus, will disqualify an applicant from operating a bus.

NEUROLOGICAL. If positive Romberg is reported, indicate degrees of impairment. Pupillary reflexes should be reported from both light and accommodation. Knee jerks are to be reported absent only when not obtainable upon reinforcement and as increased when foot is actually lifted from the floor following a light blow on the patella, sensory vibratory and positional abnormalities should be noted.

EXTREMITIES. Carefully examine upper and lower extremities. Record the loss or impairment of a leg, foot, toe, arm, hand, or fingers. Note any and all deformities, the presence of atrophy, semiparalysis or paralysis, or varicose veins. Determined whether sufficient mobility and strength exist to enable the driver to operate pedals properly. Particular attention should be given to and a record should be made of, any impairment or structural defect which may interfere with the driver's ability to operate a bus safely.

SPINE. Note deformities, limitation or motion, or any history of paid, injuries, or disease, past or presently experienced in the cervical or lumbar spine region. If findings so dictate, radiological and other examinations should be used to diagnose congenital or acquired defects; or spondylolisthesis and scoliosis.

RECTO-GENITAL STUDIES. Diseases or conditions causing discomfort should be evaluated carefully to determine the extent to which the condition might be handicapping while lifting, pulling, or during periods of prolonged driving that might be necessary as part of the driver's duties.

LABORATORY AND OTHER SPECIAL FINDINGS. Urinalysis is required, as well as such other tests as the medical history or findings upon physical examination may indicate are necessary. A serological test is required if the applicant has a history of luetic infection or present physical findings indicate the possibility of latent syphilis. Other studies deemed advisable may be ordered by the examining physician.

DIABETES. If insulin is necessary to control a diabetic condition, the driver is not qualified to operate a bus if the bus driver has an established medical history or clinical diagnosis of diabetes mellitus which has not been stabilized by insulin therapy to the degree that his or her personal physician can certify that such person has not had an incident of hypoglycemic shock for a period of two years, or since that last physical examination given pursuant to the requirements of this Part, whichever is longer. In a case where diabetes can be stabilized by a diet or hypoglycemic agent and falls within the criteria indicated above, while the driver should not be disqualified, he must be under adequate medical supervision and follow-up. The follow-up shall consist of certification every six months by the employee's personal physician that his or her condition has remained stabilized and that he or she has not had an incident of hypoglycemic shock since the last certification.

Section statutory authority: Vehicle & Traffic Law, § T5A19-A

Statutory authority: *Vehicle and Traffic Law, sections 215(a), 509-a, 509-b, 509-d, 509-g, 509-h, 509-j and 509-m*

Repealed and added 6.10 on 7/15/98; added 6.10(b)(11) on 1/27/99; added 6.10(b)(12) on 1/27/99; amended 6.10(c) on 4/16/03; amended 6.10(e) on 4/16/03; amended 6.10(f) on 4/16/03; amended 6.10(g) on 4/16/03; amended 6.10 Instructions on 4/16/03.

# 49 CFR 391.41 Physical Qualifications for Drivers

## THE DRIVER'S ROLE

Responsibilities, work schedules, physical and emotional demands, and lifestyles among commercial drivers vary by the type of driving that they do. Some of the main types of drivers include the following: turn around or short relay (drivers return to their home base each evening); long relay (drivers drive 9-11 hours and then have at least a 10-hour off-duty period); straight through haul (cross country drivers); and team drivers (drivers share the driving by alternating their 5-hour driving periods and 5-hour rest periods.)

The following factors may be involved in a driver's performance of duties: abrupt schedule changes and rotating work schedules, which may result in irregular sleep patterns and a driver beginning a trip in a fatigued condition; long hours; extended time away from family and friends, which may result in lack of social support; tight pickup and delivery schedules, with irregularity in work, rest, and eating patterns, adverse road, weather and traffic conditions, which may cause delays and lead to hurriedly loading or unloading cargo in order to compensate for the lost time; and environmental conditions such as excessive vibration, noise, and extremes in temperature. Transporting passengers or hazardous materials may add to the demands on the commercial driver.

There may be duties in addition to the driving task for which a driver is responsible and needs to be fit. Some of these responsibilities are: coupling and uncoupling trailer(s) from the tractor, loading and unloading trailer(s) (sometimes a driver may lift a heavy load or unload as much as 50,000 lbs. of freight after sitting for a long period of time without any stretching period); inspecting the operating condition of tractor and/or trailer(s) before, during, and after delivery of cargo; lifting, installing, and removing heavy tire chains; and, lifting heavy tarpaulins to cover open top trailers. The above tasks demand agility, the ability to bend and stoop, the ability to maintain a crouching position to inspect the underside of the vehicle, frequent entering and exiting of the cab, and the ability to climb ladders on the tractor and/or trailer(s).

In addition, a driver must have the perceptual skills to monitor a sometimes complex driving situation, the judgment skills to make quick decisions, when necessary, and the manipulative skills to control an oversize steering wheel, shift gears using a manual transmission, and maneuver a vehicle in crowded areas.

## §391.41 PHYSICAL QUALIFICATIONS FOR DRIVERS

(a) A person shall not drive a commercial motor vehicle unless he is physically qualified to do so and, except as provided in §391.67, has on his person the original, or a photographic copy, of a medical examiner's certificate that he is physically qualified to drive a commercial motor vehicle.

(b) A person is physically qualified to drive a motor vehicle if that person:

(1) Has no loss of a foot, a leg, a hand, or an arm, or has been granted a Skill Performance Evaluation (SPE) Certificate (formerly Limb Waiver Program) pursuant to §391.49.

(2) Has no impairment of: (i) A hand or finger which interferes with prehension or power grasping; or (ii) An arm, foot, or leg which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or any other significant limb defect or limitation which interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; or has been granted a SPE Certificate pursuant to §391.49.

(3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control;

(4) Has no current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure.

(5) Has no established medical history or clinical diagnosis of a respiratory dysfunction likely to interfere with his ability to control and drive a commercial motor vehicle safely.

(6) Has no current clinical diagnosis of high blood pressure likely to interfere with his ability to operate a commercial motor vehicle safely.

(7) Has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which interferes with his ability to control and operate a commercial motor vehicle safely.

(8) Has no established medical history or clinical diagnosis of epilepsy or any other condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle;

(9) Has no mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his ability to drive a commercial motor vehicle safely;

(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70 degrees in the horizontal meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber;

(11) First perceives a forced whispered voice in the better ear not less than 5 feet with or without the use of a hearing aid, or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz and 2,000 Hz with or without a hearing device when the audiometric device is calibrated to American National Standard (formerly ASA Standard) Z24.5-1951;

(12) (i) Does not use a controlled substance identified in 21 CFR 1308.11 Schedule I, an amphetamine, a narcotic, or any other habit-forming drug. (ii) Exception: A driver may use such a substance or drug, if the substance or drug is prescribed by a licensed medical practitioner who: (A) Is familiar with the driver's medical history and assigned duties; and (B) Has advised the driver that the prescribed substance or drug will not adversely affect the driver's ability to safely operate a commercial motor vehicle, and

(13) Has no current clinical diagnosis of alcoholism.



U.S. Department of Transportation
Federal Highway Administration

# CONFERENCE ON NEUROLOGICAL DISORDERS and COMMERCIAL DRIVERS

Office of Motor Carriers
Washington, D.C. 20590

Pub. No. FHWA-MC-88442

July 1988

FMCSA guidelines  1/4

TASK FORCE I REPORT: STATIC NEUROLOGICAL CONDITIONS

Mark L. Dyken, M.D. (Chairman)
Harold P. Adams, Jr., M.D.
Michael H. Brooke, M.D.
Matthew Rizzo, M.D.
Harold F. Young, M.D.

# CEREBROVASCULAR DISEASE

Cerebrovascular events may cause cognitive, judgment, attention, concentration, and/or motor and sensory impairments that can interfere with normal operation of a commercial vehicle. Patients with several types of cerebrovascular disease are also at risk for recurrent events that can occur without warnings: Patients with ischemic cerebrovascular disease are also at a high risk for acute cardiac events including myocardial infarction or sudden cardiac death. Recurrent cerebrovascular symptoms or cardiac events can occur with frequent sufficiency to cause concern about the safe operation of a commercial vehicle.

The common types of cerebrovascular disease are:

* Transient Ischemic Attack/Minor Stroke with minimal or no residual impairment.

* Embolic or Thrombotic Cerebral Infarction with moderate to major residual impairment.

* Intracerebral or Subarachnoid Hemorrhage.

<u>Transient Ischemic Attack/Minor Stroke</u>

A Transient Ischemic Attack (TIA) is an episode of focal neurological dysfunction reflecting inadequate blood supply to one portion of the brain. The attack usually lasts more than a few seconds but less than 20 minutes. In exceptional cases, the symptoms can persist up to 24 hours, Resolution of symptoms is complete. At the time of physical examination, the patient is usually normal. A minor stroke is a cerebrovascular episode in which the patient completely recovers over a period greater than 24 hours or in which minor neurological residuals remain. A TIA or minor stroke is an important warning of a potentially severe stroke. The risk is high whether the patient has had one or several attacks. The risk of recurrent events is particularly great during the first few weeks and months after the TIA or minor stroke. By one year after the minor stroke or TIA, the risk of recurrent cerebrovascular symptoms has declined to under 5 percent per year. All patients with a TIA or minor stroke should have an evaluation that includes a neurological examination. Medical or surgical options for treatment of these patients include aspirin, oral anticoagulants or carotid endarterectomy. The risk of recurrent strokes may be lowered by medical or surgical interventions.

Because the recurrence rate of ischemic neurological symptoms is highest during the first year after TIA or minor stroke, no commercial driver should be permitted to return to driving until he/she has had a careful evaluation of the event and a treatment plan has been outlined by a physician. The drivers should not return to commercial driving within one year of the stroke. A decision for clearance after one year will depend upon the interval history, general health, neurological examination and compliance with the treatment regimen. This clearance should be done by a neurologist. Any driver with a deficit that requires special evaluation and screening should be recertified annually. In the event that the driver is receiving drugs that have potentially high rates of complications, such as bleeding tendencies with oral anticoagulants, he/she should not return to driving. In the event, the driver is taking medications that have a potentially depressing effect on the nervous system, he/she should not be qualified to drive.

Transient global amnesia is an episode of amnesia and confusion that usually recovers completely with no permanent behavioral or cognitive sequelae. While transient global amnesia is a syndrome, it is generally considered to be a variety of cerebral ischemia It is

21



unusual for transient global amnesia to be a warning for a major, disabling stroke. Recurrence of amnestic spells is also rare. Patients with transient global amnesia should have a thorough neurological examination including electroencephalography and psychometric tests. If the results are normal, the commercial driver can return to duty. In the event of recurrences, the above evaluation should be repeated and a decision on driving status should be made.

### Embolic or Thrombotic Cerebral Infarction

Embolic or thrombotic cerebral infarctions are the most common forms of cerebrovascular disease. Patients have a rapid to sudden onset of focal neurological signs in the anatomic distribution of one or more blood vessels of the brain. Permanent residuals, of more than a minor nature, remain. These events can result from atherosclerosis or other vasculopathies of the cerebral arteries or from migration of blood clots to these vessels from another site such as the heart. Drivers with a recent cerebral infarction warrant an evaluation to determine the source of the stroke and to establish the appropriate medical, surgical, and/or rehabilitation regimen. As in patients with a TIA or minor stroke, these persons are at increased risk of recurrent attacks. Restrictions on commercial driving should, at a minimum, be the same as those for patients with a TIA.

Patients with embolic or thrombotic cerebral infarction also will have residual intellectual or physical impairments severe enough to prevent a return to commercial driving. Fatigue, prolonged work and stress may exaggerate the neurological residuals from a stroke. Most recovery from a stroke will occur within one year of the event. Commercial drivers who wish to return to full work status should undergo a careful neurological examination at one year after the stroke that includes assessment of his/her cognitive abilities, judgment, attention, concentration, vision, physical strength, agility, and reaction time. If the neurological residuals from the cerebral infarction are sufficiently severe to interfere with any of the above, then the driver should not be allowed to return to commercial driving. Any driver with a deficit that requires special evaluation and screening should be recertified annually.

A number of 'patients with an embolic or thrombotic cerebral infarction will have complicating seizures. The likelihood of seizure recurrence is associated with the location of the associated lesions. The risk is increased primarily in individuals with lesions associated with cortical or subcortical deficits. Individuals with strokes resulting in vascular lesions involving the cerebellum and brainstem are not at increased risk for seizure, thus, based on the probability of seizure recurrence, individuals with occlusive cerebral vascular disease with fixed deficits involving areas other than the cerebellum and brain stem should not be considered qualified to obtain a license to operate a commercial vehicle for a 5 year period following the episode. Evaluation by an appropriate specialist to confirm area of involvement may be required for waiver of this restriction.

### Intracerebral or Subarachnoid Hemorrhage

Intracerebral hemorrhage results from bleeding into the substance of the brain and subarachnoid hemorrhage reflects bleeding primarily into the spaces around the brain. Bleeding occurs as a result of a number of conditions including hypertension, hemorrhagic disorders, trauma, cerebral aneurysms, neoplasm, arteriovenous malformations, or degenerative or inflammatory vasculopathies. In approximately 20 percent of patients with subarachnoid hemorrhage, a cause will not be established. Patients with a history suggestive of either an intracerebral or subarachnoid hemorrhage should undergo an extensive evelua-

4|4

# MEDICAL STANDARDS:
# THE NERVOUS SYSTEM

1. Postcerebrovascular accident (438.9), is acceptable if an individual is able to perform the essential functions of the job. Persons should be evaluated on sensory, motor, mental, and communicative abilities. If the person requires anticoagulation therapy, *see* Chapter 8, The Hematopoietic System. If associated diseases such as hypertension or diabetes are present, *see* appropriate section of the Medical Standards.

    *Note:* Cerebrovascular accident can vary greatly for the amount of residual impairment persisting after maximum rehabilitation. Complete neurological evaluation, including eye examination, should be documented.

2. Transient ischemic attack (435.9) is unacceptable. Neurologic evaluation of the neurological deficit, duration, and repetitiveness of the transient neurologic dysfunction and its pathophysiologic cause (low flow vs. embolic) should be defined. Identification, palliation, or correction of basic pathophysiologic mechanisms must be accomplished prior to acceptance. General cardiovascular status must be evaluated.

    *Rationale:* Transient ischemic episodes frequently warn that a stroke may follow.

3. **Epilepsy with mention of intractable epilepsy (345.91), specified grand mal (345.11), petit mal (345.01), or focal seizures (345.51), with frequent seizures, even while complying with prescribed medication, is unacceptable.**

    *Note:* Applicants with epilepsy should be evaluated for (1) character and pattern of seizure, (2) frequency, (3) timing (diurnal, nocturnal, or both), (4) alterations in awareness or loss of consciousness, (5) side effects of treatment, and (6) compliance with treatment.

4. **Epilepsy without mention of intractable epilepsy (354.90), specified grand mal (345.10), petit mal (345.00), or focal seizures (345.50), with no seizures for at least 1 year** is acceptable if the applicant is under ongoing supervision by a neurologist and working conditions do not exceed the following:

    | Working Condition   | Exposure | Frequency |
    | ------------------- | -------- | --------- |
    | Moving Objects      | 0        | 0         |
    | High Elevations     | 1        | 1         |
    | Body Injuries       | 2        | 1         |
    | Burns               | 0        | 0         |
    | Electrical Hazards  | —        | 0         |
    | Irregular Work Hours| 2        | —         |
    | Driving             | —        | none      |

    *Rationale:* Recommendations are made to protect the applicant, co-workers, and the public, because seizures could occur without warning. Individuals with a history of epilepsy are ineligible for Article 19A certification. Special consideration should be given to shift work or irregular work hours, because sleep deprivation is one of the common triggers of seizures.

NYC Transit Authority Standards

195

11.