**3.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRIAN THRANE, | ) | |
| | ) | |
| Plaintiff, | ) | 15-CV-7418 (FB)(LB) |
| | ) | |
| -against- | ) | |
| | ) | |
| | ) | |
| METROPOLITAN TRANSPORTATION | ) | |
| AUTHORITY and MTA BUS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Paige Ann Evans
General Counsel
MTA Bus Company
2 Broadway, 30th Floor
New York, New York   10004
(646)252-3745

By:  Thomas J. Deas
Deputy General Counsel
MTA Bus Company
(646)252-4359

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………iii

PRELIMINARY STATEMENT…….……………………………………………..1

STATEMENT OF FACTS …………………………………...…………….…..…2

    A.  Plaintiff Was Made Whole For His Lost Earnings…………………..…..2

    B.  The Records, Which Are Extensive,
        Do Not Support Plaintiff's Emotional Distress Claim…………...………5

STANDARDS OF REVIEW ………………………………………………..……6

    A.  Motion to Dismiss ……………………………………………....6

ARGUMENT…………………………………………...…………….…………. 7

I.  PLAINTIFF FAILS TO STATE A CLAIM FOR
    DISCRIMINATION UNDER THE ADA ..……...……………………..……7

    A.  Prong 3: Plaintiff Was Not Qualified to Operate
        A Bus Until He Was Properly Medically Cleared to Do So…...…….… 8

    B.  Prong 4: Plaintiff Has Not Suffered
        An Adverse Employment Action …….……………………………. 9

    C.  Plaintiff Fails to Meet the Threshold
        To Establish Any Emotional Distress Damages …………….……..…10

    D.  Plaintiff Fails to State a Claim For Retaliation………….……….…...12

II. PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION
    OR RETALIATION UNDER THE ADEA …...……………….…… .....….… 13

    A.  Age Discrimination Under the ADEA…………………………….13

    B.  Plaintiff Fails to State a Claim for Retailiation………………………14

III.  IT IS AGAINST PUBLIC POLICY TO SET ASIDE
    THE ARBITRATOR'S FINDINGS…….…………………………..15

CONCLUSION …………………………………………...……………...17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) ............................................................ 12

*Annis v. County of Westchester*, 136 F.3d 239 (2d Cir. 1998) ...................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................7

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) ....................................7

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) .....................................9

*Carey v. Piphus*, 435 U.S. 247, 264 (1978) ..................................................................11

*Collins v. N.Y. City Transit Authority*, 305 F.3d 113 (2d Cir. 2002) ........................ 15

*Cortes v. MTA New York City Transit*, 2014 Lexis 190277 (E.D.N.Y. 2014) ..............15

*Derbaremdiker v. Applebee's Int'l Inc.*, 2012 LEXIS 138596 (E.D.N.Y. 2012) .............7

*Elhanafi v. Shinseki*, 2012 LEXIS 81302 (E.D.N.Y. 2012) .........................................13

*Giaccio v. City of New York, et al.*, 502 F. Supp. 2d 380 (S.D.N.Y. 2007) ............ ......10

*Gonzalez v. New York City Transit Auth.*, 2001 LEXIS 5908 (S.D.N.Y. 2001) .............. 13

*Gore v. Turner*, 563 F.2d 159 (7th Cir. 1978) ..............................................................11

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ............................................................. 14

*Harrison v. North Shore Univ. Hosp.*, 2008 LEXIS 17330 (E.D.N.Y. 2008) .............. 14

*Heaton v. Weitz Co., Inc.*, 534 F.3d 882 (8th Cir. 2008) ............................................11

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) ..................................... 13

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ................................................................7

*Lupe v. Shinseki*, 2012 LEXIS 120508 (N.D.N.Y 2012) .............................................13

*Mack v. Otis Elevator Co.*, 326 F.3d 116 (2d Cir. 2003) ........................................... 13

*Marcus v. Leviton Manufacturing Company, et al.*, 661 Fed. Appx. 29 (2d Cir. 2016) .........................13

*Paul v. Lenox Hill Hosp.*, 2016 U.S. Dist. LEXIS 16548 (E.D.N.Y. 2016) .......................................9

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). ....................................14

*Ruhling v. Tribune Co.*, 2007 LEXIS 116 (E.D.N.Y. 2007). ..............................................11

*Saunders v. Queensborough Comm. Coll.*, 2015 LEXIS 128608 (E.D.N.Y. 2015) ..............................13

*Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997) .................................................12

*Seiderbaum v. New York City Transit Authority*, 309 F.Supp.2d 618 (2005).........  ..................... 5, 8

*Shannon v. New York City Transit Authority*, 332 F.3d 95, 100 (2d Cir.2003) .............................8

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ..................................................14

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ......................................................12

*Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015) ..........................13, 14

*Williams v. NYC Dep't of Sanitation*, 2001 LEXIS 15594 (S.D.N.Y. 2001) ..................................13

## Statutes

Age Discrimination in Employment Act, 29 U.S.C. §§621-634 ..........................................1

Americans with Disabilities Act of 1990, 42 U.S.C. 12101-12117 .........................................1

New York City Human Rights Law/N.Y.C. Admin. Code §§8-101 *et seq.* ...................................1

New York Codes Rules and Regulations, Title 15, §6.10 ................................................8, 9

New York State Vehicle and Traffic Law Article, Title V, Article 19-A ............................. 8, 9

## Other Authorities

The U.S. Equal Employment Opportunity Commission,
Enforcement Guidance: Compensatory and Punitive Damages
Available under §102 of the Civil Rights Act of 1991, A.2        ......................................11

## PRELIMINARY STATEMENT

The Defendants, METROPOLITAN TRANSPORTATION AUTHORITY and MTA BUS COMPANY submit this memorandum of law in support of their motion to dismiss the First Amended Complaint pursuant to the Fed.R.Civ.P. 12(b)(6) for failure to state a cognizable disability discrimination claim against the Defendants under the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and New York City Human Rights Law/N.Y.C. Admin. Code §§8-101 *et seq.*, (NYCHRL) because:  1) the pleadings are insufficient to state a cause of action for disability or age discrimination; 2) the facts and law of which the Court may take judicial notice establish that plaintiff's allegations are meritless; 3) the plaintiff is collaterally estopped from alleging economic damages; and 4) the plaintiff suffered no damages, economic or non-economic.

Plaintiff's First Amended Complaint sets forth general allegations of age and disability that are conclusory (Complaint, **Exhibit A**).  The pleadings do <u>not</u> set forth allegations that, if taken as true, would support a claim.  As will be detailed, the plaintiff has alleged lost pay (back pay and front pay) for a period of time in which he was placed in a non-safety sensitive position (as a Cleaner) at his full rate of pay as a Bus Operator, while undergoing medical evaluations mandated by federal and state law and established medical standards.

At the outset it must also be noted that, <u>after</u> he commenced this action, the plaintiff proceeded to several arbitrations where he was represented by his union and an attorney, and at which he was granted permission to return to work and, later, received an award at another arbitration for incremental union rate-of-pay increases that he had not received while in his non-safety sensitive (Cleaner) position.  He cashed the award check without reservation.

## STATEMENT OF FACTS

**A.**     **Plaintiff Was Made Whole**
**For His Lost Earnings**

The record evidence and chronology of events reveal no allegations that form a basis on which the plaintiff can support a claim of lost earnings.  In sum, plaintiff, then a 60-year old, full-time passenger bus operator employed by defendant MTA Bus Company, fell ill on April 16, 2015, and went to the hospital, where he was admitted with complaints of two episodes of dizziness and right leg weakness.  One episode had occurred while he was driving a bus.  According to his hospital admission record:

> The patient states while driving a bus around 7 pm last night he lost coordination.  He was unable to move his leg and step on his brakes.  He also had sudden onset of dizziness with the symptoms.  While walking towards his car a second episode occurred and he was instructed by his wife to come to the ED. (Hospital Record, **Exhibit B**)

No psychiatric complaints were diagnosed.  His psychological exam revealed "affect/mood appropriate."  His neurological test showed positive for right leg weakness and vertigo.  He was released the next day, April 17, 2015, and instructed <u>not</u> to return to work until he was medically cleared.

Thereafter, the plaintiff was placed on restricted duty at his full Bus Operator's rate of pay, for the period June 9, 2015, through May 24, 2016, during which time he was assigned to a Cleaner position pending resolution of his medical issues.  On May 24, 2016, he was returned to full duty as a Bus Operator for MTA Bus Company.

In the interim, while in the Cleaner position, the plaintiff and his union representatives appeared before a third-party arbitrator on or about March 8, 2016, noting that an independent medical examination (IME) had concluded that he was able to return to work.  At that arbitration, in which he was represented, his employer, defendant MTA Bus Company, requested and was granted an additional 30 days to obtain additional information which it sought concerning his medical

condition. The arbitrator granted the application and set forth that he would formally decide the date of plaintiff's reinstatement as a Bus Operator in April (Arbitration Decision dated March 8, 2016, **Exhibit C**). However, in April, the plaintiff claimed he had Lyme Disease. At his next arbitration, held on May 11, 2016, the arbitrator directed plaintiff to provide proof from his treating doctor that he did not have Lyme Disease, and that upon submitting such proof he would then complete a VTL 19-A Bus Operator physical examination and return to duty as a Bus Operator (Arbitration Decision dated May 11, 2016, **Exhibit D**). Thereafter, the plaintiff returned to duty as a Bus Operator on May 24, 2016, and remained working as a Bus Operator for approximately one month. On or about June 29, 2016, he filed a Workers' Compensation claim[1] for a job-related motor vehicle accident and has not returned to his job since.[2]

On July 6, 2016, the plaintiff again appeared before a third-party arbitrator for his claim of lost pay. The arbitrator found that plaintiff was entitled to additional pay based on collective bargaining rate-of-pay increases that had occurred during the period of time he had been placed in his Cleaner position. His hourly rate of pay in April 2015, was approximately $29.95. Bus Operator hourly rates of pay had increased during his restricted duty period, initially to $31.79 and, later, to $32.43. The arbitrator awarded the plaintiff the Bus Operator rate-of-pay increases, minus 25 percent.

Subsequently, on or about August 17, 2016, the plaintiff received the award check in accordance with the last arbitration and cashed it, without reservation. The check was for $10,100, minus deductions. Copies of the arbitrator's decision, the employer's calculations, and check are

---

[1] This is not plaintiff's first Workers' Compensation claim. According the April 2015 hospital records he has an active Workers' Compensation claim from a 2008 slip and fall accident.
[2] Except to appear at the arbitration in July 2016 to participate in his arbitration to recover pay for the same claim he is making in this Court.

annexed hereto as **Exhibit E**, "Defendants' First Supplemental Initial Disclosures," filed January 6, 2017 (DE[3] 24).

In accordance with this Magistrate Judge's directives, plaintiff's payroll record for the period April 20, 2015 through April 20, 2016, was exchanged with plaintiff's counsel and, additionally, for comparison purposes, his payroll records for the prior year were also exchanged; that is, for the period April 20, 2014 through April 20, 2015, when he was employed as a full time Bus Operator. For the earlier period, he earned $75,332.32. For the later period that covered his time as a Cleaner, he earned $72, 234.82. The difference is $3,097.50.[4] While plaintiff claims he earned less, it must be noted that he received the arbitration award check in August 2016 for $10,100.00. Any conjecture that he might have earned even more is speculative, at best, since overtime is <u>not</u> guaranteed. Furthermore, that issue would have been raised before the arbitrator by plaintiff's counsel. The arbitrator evidently did not provide for such relief.

In conclusion, plaintiff was made whole (indeed, more than whole for any wage claim). He proceeded with his claims through administrative proceedings where the date for his return was chosen by an arbitrator, in accordance with the law, and where he was awarded the damages he sought. Plaintiff has set forth no factual predicate for his claim of lost pay, and no record evidence supports it.

---

[3] DE hereinafter designate the entry number on the Docket. These disclosures pertain to plaintiff's lost pay claim and include a copy of the July 6, 2016 arbitration decision.
[4] Overtime pay, characterized as "run time" pay, is sometimes available to Bus Operators on the basis of seniority. It is not guaranteed. Each calendar year, on a quarterly basis, Bus Operators choose, on the basis of their seniority, which "runs" they want. Some runs can provide additional working hours and, thus, these can be viewed as more desirable than others.

**B.      The Records, Which Are Extensive,
         Do Not Support Plaintiff's Emotional Distress Claim**

Defendants have exchanged the plaintiff's medical records[5] in connection with plaintiff's April 16, 2015, medical event for which he went to the hospital with complaints of dizziness and right foot coordination issues.   A substantial volume of records covering the period of plaintiff's restricted duty—his medical examinations and diagnostic test results—were included in the records exchanged. To date plaintiff's counsel has pointed out only two notes which he says support his claim of emotional distress.  Both are contained in plaintiff's April 17, 2015, hospital discharge.  One describes under the heading, "PHYSICAL EXAM", next to the sub-category, "PSYCHOLOGICAL" the following: "anxious to return to work" (Exhibit B, page 2 of 7).  The other part of the hospital discharge contains the following notes the under the heading "DISCHARGE SUMMARY PHYSICIAN":

> Of note, the patient states he wants to go back to work as soon as possible.  He was instructed that due to the nature of his symptoms (ruled out for CVA, but suspicion of TIA) and his profession (works as MTA bus driver); that we can not advise him to return to work until cleared by his primary care physician and neurology.  The patient was upset with this, however he was informed of the risks to his own health, and that of the general public in returning to work too early.  He verbalized understanding. (Exhibit B; page 5 of 7)

No additional records have been identified by plaintiff's counsel in support of the emotional distress claim.   Further, plaintiff's First Amended Complaint does not set forth any basis for an emotional distress claim.  Moreover, while the law, cited *infra*, does not draw a bright line on what constitutes emotional distress, it does make clear what kind of evidence should be considered.   Plaintiff's failure

---

[5] The MTA Medical Assessment Center (MAC) performs medical examinations for the purpose of complying with federal and state laws that require Bus Operators to meet safety-sensitive standards that are higher than for other drivers.  These standards are discussed at length in *Siederbaum v. City of New York and New York City Transit Authority*, 309 F.Supp.2d 618 (S.D.N.Y 2005), *aff'd* 121 Fed. Appx. 435 (2d Cir. 2005).

to set forth allegations beyond a conclusory claim that he was kept out of his Bus Operator position for too long does not provide sufficient notice of his emotional distress.

It must be noted again, that federal and state laws require Bus Operator's to meet higher standards than other drivers because the public's safety is at issue.  Plaintiff's own physician, Arthur H. Weiss, found on May 18, 2015, the plaintiff could return to his job, *while at the same time noting that he suffered from "decreased right foot tapping" and that "the possibility that an episode of left cerebral ischemia occurred cannot be completely excluded,"* confirming on May 19, 2015 in an addendum that the plaintiff had indeed suffered episodes of "cerebral dysfunction that appear to have been transient ischemic attacks" (i.e., strokes)(Weiss medical examination findings, **Exhibit F**).  And while he concluded that the plaintiff nevertheless could return to work, he changed that conclusion on June 8, 2015, after reviewing defendant's medical standards (which, as noted, are based on federal and state law), and are described at length in the *Siederbaum* case, *see* FN 5).

Finally, it should be brought to this Court's attention that the plaintiff, upon returning to service as a Bus Operator, signed on May 13, 2016, that he never had "anxiety, depression, nervousness, other mental health problems" (Driver Health History, **Exhibit G**).  That date represents the time when he was permitted to complete his VTL 19-A examination at the Medical Assessment Center and return to duty as a Bus Operator.

## STANDARD OF REVIEW

A.    **Motion to Dismiss**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face.*'"*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  The

determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 *(citing Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007)).

When a defendant moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), the Court must first determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is 'plausible on its face.' *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a clause" or "labels and conclusions" will not suffice. *Iqbal,* 556 U.S. at 678 (2009). Where "the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed.R.Civ.P. 8(a) because it fails to 'show . . . that the pleader is entitled to relief.'" *Id.* at 679.

In evaluating the motion, the Court may consider matters of which judicial notice may be taken and documents that are 'integral' to the pleading. *Derbaremdiker v. Applebee's Int'l Inc.,* 12 CIV 1058, 2012 U.S. Dist. LEXIS 138596 at *2 (E.D.N.Y. Sept. 26, 2012), *aff'd* 519 Fed. App'x. 77 (2d Cir. 2013).

## ARGUMENT

### I.   PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION UNDER THE ADA

A prima facie claim for violation of the ADA must satisfy this four-prong test:

A plaintiff bears the initial burden of establishing a prima facie case of discrimination under the ADA . . . . To do so, the plaintiff must show, by a preponderance of the evidence, (1) that his employer is subject to the ADA, (2) that he suffers from a disability within the meaning of the ADA . . . , (3) that he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation, and (4) that he suffered an adverse employment action because of his disability. *See Brady v. Wal-Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir. 2008).

7

Plaintiff fails to establish a prima facie case under the third and fourth prongs.   For the relevant period of time in which he claims he was discriminated against, he was not qualified to perform the essential functions of his Bus Operator job with or without reasonable accommodation, nor was he subject to an adverse employment action because of any disability or otherwise.

**A.**   **Prong 3:  Plaintiff Was Not Qualified to Operate a Bus Until He Was Properly Medically Cleared to Do So**

In order to be legally "disabled" under the ADA, Plaintiff would have to be substantially limited in a major life activity.  Suffering a transient ischemic attack and right foot loss coordination is a substantial limitation for a Bus Operator in New York State, particularly in terms of transporting passengers whose safety and lives depend on the fitness of the operator.  When a bus operator's condition renders him or her unable to meet the medical standards necessary pursuant to New York State Vehicle and Traffic Law Article 19-A (VTL 19-A), he is disqualified from operating the bus, at least until proven by the MTA Medical Assessment Center fit to return to duty. *See Siederbaum v. City of New York and New York City Transit Authority*, 309 F.Supp.2d at 628-29 ("In determining whether an individual can perform the essential functions of a job, 'a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.' *Id.* at 628-9 (citing *Shannon v. New York City Transit Authority,* 332 F.3d 95, 100 (2d Cir.2003))(employers may use qualification standards which screen or deny a job to an individual with a disability, provided the employer justify the standards as consistent with business necessity, and further noting that qualification standards are an affirmative defense to a charge of disability discrimination).  Citing to *Shannon*, F.3d at 102, the *Siederbaum* Court further noted VTL19-A requires Bus Operators to have no "mental, nervous, organic, or functional disease of psychiatric disorder likely to interfere with the ability to control and safely operate a bus" (citing 15 NYCRR 6.10(b)(8)); the Bus Operator's employer

8

is required to certify that its bus operators meet the safety requirements of VTL 19-A. *Id.* 309 F.3d at 628-9. Other grounds for disqualification of bus operators include vascular disease, neuromuscular disease, or any condition likely to cause loss of consciousness or any loss of ability to control and safely operate a bus. *See* 15 NYCRR 6.10(b)(6)(7). Federal and state law, and the MTA Medical Assessment Guidelines which are based on federal and state standards for Bus Operators, cannot be ignored. The allegation that plaintiff was kept out of his position for too long, and that other private sector doctors had approved his return to work sooner, is conclusory. The standards they utilized are not acceptable pursuant to federal and state laws (Laws and guidelines, **Exhibit H**). Moreover, the third-party arbitrator, to whom he submitted his grievance on this very issue, listened to the facts and arguments, giving the employer time to obtain additional information, and providing a date to determine when the plaintiff could be returned to work, a date with which MTA Bus complied (Exhibit D).

**B.     Prong 4:  Plaintiff Has Not Suffered an Adverse Employment Action**

In order to state a prima facie case of discrimination under the ADA, plaintiff would have to have suffered some adverse employment action, which materially altered the terms and conditions of his employment. *Paul v. Lenox Hill Hosp.,* 2016 U.S. Dist. LEXIS 16548 at 30 (E.D.N.Y. Jan. 15, 2016)("An 'adverse action' must be materially adverse; it must 'affect employment or alter the conditions of the workplace.'" *Id.) See also Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 62 (2006).

In the instant case, plaintiff has not alleged or provided evidence that he suffered an adverse employment action. He was offered another job (as a Cleaner) rather than be put on disability during the period that the MTA Medical Assessment Center evaluated him. While he may have preferred to be a

9

Bus Operator, his employer was required by law to remove him for public safety reasons, as referenced *supra*. He did not refuse employment as a Cleaner and, in fact, at Bus Operator pay.

Plaintiff fails to allege facts that he suffered an adverse employment action in connection with his disability. Pursuant to his union's request, he was given another job rather that going out on disability. Being held out of the safety-sensitive position of Bus Operator, and being placed in the non-safety sensitive position of Clearer (at his Bus Operator rate of pay), during the period of his medical evaluation, is not an adverse employment action. Moreover, being subjected to the federal and state law guidelines and a careful medical evaluation for the purpose of ensuring the safety of the general public is not an adverse employment action.

**C.      Plaintiff Fails to Meet the Threshold
         To Establish Emotional Damages**

As discussed above, plaintiff has no lost pay damages. His claim for emotional distress damages fails as well. To begin with, he fails to identify the basis for his emotional distress claim. "Emotional distress" damages are claimed under the first three Causes of Action in the First Amended Complaint. No other information is provided. Certainly, the claim of emotional distress is not based on tort, as neither intentional nor negligent infliction of emotional distress is alleged and plaintiff's allegations do not infer facts necessary to make out such claim. And neither do plaintiff's allegations support claim made under the ADA, or for that matter, the NYCHRL. "[B]are allegations of mental/emotional distress, mental anguish, stress and inconvenience, unsupported by any evidence, are insufficient to establish the damages necessary to maintain Plaintiff's action." *Giaccio v. City of New York, et al.*, 502 F. Supp. 2d 380 (S.D.N.Y. 2007).

Moreover, if plaintiff intended to seek compensatory damages for emotional distress under the ADA, ADEA or NYCHRL, he must allege or submit evidence of actual non-economic injury

caused by his or her employer. *Carey v. Piphus*, 435 U.S. 247, 264 (1978). The plaintiff must establish the causal connection between the employer's alleged violation and those damages. *See e.g., Ruhling v. Tribune Co.*, 2007 LEXIS 116 at *77-79 (EDNY 2007). "An award for emotional harm is warranted only if there is sufficient causal connection between the respondent's illegal actions and the complaining party's injury." The U.S. Equal Employment Opportunity Commission, Enforcement Guidance: Compensatory and Punitive Damages Available under §102 of the Civil Rights Act of 1991, A.2 (citing *Gore v. Turner*, 563 F.2d 159, 164 (7th Cir. 1978). "The discriminatory act or conduct must be the cause of the emotional harm. The claim of emotional harm will be seriously undermined if the onset of symptoms of emotional harm preceded the discrimination." *Id.*[6]

As the amount for emotional distress damages increases, so does the evidentiary threshold. *See Annis v. County of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998)(plaintiff's "own testimony" held insufficient to support damages for emotional distress where there were no physical manifestations of distress alleged and no evidence corroborating that plaintiff received counseling; noting also that plaintiff remained employed on the job. *Id.*). For a plaintiff to support a claim for compensatory damages for emotional distress, the plaintiff would show psychological or family counseling, or that he or she began to take antidepressant medication which caused physical symptoms such as sweating, nausea or insomnia. *See e.g., Heaton v. Weitz Co., Inc.,* 534 F.3d 882, 891-893 (8th Cir. 2008).

What the plaintiff has done so far in this case is point to his hospital record (Exhibit B), which does not describe emotional distress, as evidence of his emotional distress damages. As stated earlier, such evidence alone does not establish damages. The safety of the general public is a priority that imposes a heavy burden on the public transportation carriers. Where there is a medical determination

---

[6] Plaintiff's counsel has relied on the April 16, 2015, hospital record (Exhibit B) to establish his client's emotional distress claim. At that point, plaintiff had taken himself directly to the hospital for his physical complaints. He was placed on restricted duty June 9, 2015, nearly two months later.

of a Bus Operator suffering a stroke and lack of coordination of his right (braking) foot, the defendants are required to exercise extreme caution before permitting him back on the road transporting passengers.  While other doctors might have different standards for what qualifies an individual to return to work, the law requires the defendants to ensure that its Bus Operators meet high medical standards for the safety of the public.

D.      **Plaintiff Has Failed to State a Claim of Hostile Work Environment**[7]

"[T]he standard for establishing a hostile work environment is high." *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir. 2003). "To make out a hostile work environment claim, a plaintiff must establish that: (1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997).  It is important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals." *Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir. 2002).

Plaintiff's allegations are insufficient as a matter of law to state a claim for a hostile work environment. "Even viewing the evidence in a light most favorable to plaintiff, based upon the record, no reasonable person would conclude that his taking a Cleaner position under the circumstances (medical) amounted to a workplace that 'was permeated with discriminatory intimidation that was

---

[7] The Second Circuit has not explicitly recognized hostile work environment claims pursuant to the ADA (*see Adams v. Festival Fun Parks, L.L. C.,* 560 Fed. App'x. 47, 51 (2d Cir. 2014)), but some district courts in this Circuit have recognized these claims. See *e.g., Hong Yin v. N Shore LLI Health Sys.,* 20 F. Supp. 3d 359, 370 (E.D.N.Y. 2014).  Therefore, Defendants address the issue here.

sufficiently severe or pervasive to alter the conditions of plaintiff's work environment.' *Elhanafi v. Shinseki,* 2012 U.S. Dist. LEXIS 81302, 2012 WL 2122178 at *17 (E.D.N.Y. 2012)(citing *Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir. 2003))." *See also Lupe v. Shinseki,* 2012 U.S. Dist. LEXIS 120508 at * 67 (N.D.N.Y Aug. 24, 2012); *Saunders v. Queensborough Comm. Coll.,* 2015 U.S. Dist. LEXIS 128608 at *14-15 (E.D.N.Y. 2015). "'[U]nfair' treatment or personal animosity is not actionable, only discriminatory treatment is." *Williams v. NYC Dep't of Sanitation,* 2001 U.S. Dist. LEXIS 15594 at *50 (citing *Gonzalez v. New York City Transit Auth.,* 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *14 (S.D.N.Y. 2001).

Plaintiff does *not* allege that he was terminated.  In fact, he was given another job at his same Bus Operator rate of pay.  He was removed from his Bus Operator position by operation of law and evaluated by the MTA Medical Assessment Center as required.

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION UNDER THE ADEA

### A.   Age Discrimination Under the ADEA

The standard recently set forth by the Second Circuit in *Marcus v. Leviton Manufacturing Company,* is that to survive a Rule 12(b)(6) motion to dismiss, the "plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action" (citing *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015)). *Marcus v. Leviton Manufacturing Company, et al.,* 661 Fed. Appx. 29, 32 (2d Cir. 2016).  "A plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality (citing *Littlejohn v. City of New York,* 795 F.3d 297, 310-11 (2d Cir. 2015)).  *Id.*  A plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the

"conceivable" to the 'plausible' (citing *Vega*, 801 F.3d at 84, which cited *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). *Id.*

The allegations in plaintiff's First Amended Complaint are bereft of any specific facts and, being utterly conclusory, fail to support an age discrimination claim. *See Marcus*, 661 Fed. Appx. at 32. It is no small omission that plaintiff failed to include a cause of action for violation of the ADEA (*See* Complaint, Exhibit A).

## B.     Plaintiff Fails to State a Claim for Retaliation

Plaintiff cannot establish a retaliation claim. He does not allege that he engaged in any protected activity.  He does not even allege that he ever complained to anyone about any alleged disability discrimination, or any other kind of discrimination.

> Retaliation claims brought under [the ADA] utilize a three step burden shifting analysis. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). First, plaintiff must establish a prima facie case of retaliation by showing that he 1) participated in a protected activity known to the defendant; 2) that an adverse employment action was taken, disadvantaging plaintiff; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998).

*Harrison v. North Shore Univ. Hosp.,* 2008 U.S. Dist. LEXIS 17330 at \*29 (E.D.N.Y. 2008).

There is no causal connection where an alleged adverse employment action precedes a protected activity. "Of course, in examining the sufficiency of [plaintiffs] pleadings of retaliation, we must omit from consideration those episodes of harassment that preceded her protected activity (i.e., her workplace complaints and state court lawsuit), since prior harassment could not have been in retaliation for acts not yet taken." *Gregory v. Daly,* 243 F.3d 687, 701 (2d Cir. 2001).

There was no adverse employment action as defendants were required by law to remove plaintiff from his safety-sensitive position and evaluate him pursuant to the higher standards of

qualification required of Bus Operators.  It should go without saying that passenger Bus Operators are subject to strict qualifications for safety reasons.


**III.   IT IS AGAINST PUBLIC POLICY
TO SET ASIDE THE ARBITRATOR'S FINDINGS**

Substantial weight is given to arbitrator decisions. *See Cortes v. MTA New York City Transit,* 2014 Lexis 190277 ("[A] decision of an independent and unbiased arbitrator based on substantial evidence after a fair hearing . . . has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive," citing *Collins v. N.Y. City Transit Authority,* 305 F.3d 113, 115 (2d Cir. 2002).   The *Cortes* court noted further that a challenge to such a determination requires the plaintiff to present "strong evidence that the decision was wrong as a matter of fact . . . or that the impartiality of the proceeding was somehow compromised." *Id.* (citing *Collins, Id.* at 119).

During the pendency of this lawsuit, a third-party arbitrator found that plaintiff was entitled to additional pay based on bargaining increases to Bus Operator hourly rates of pay, minus 25 percent. These increases occurred during the period that plaintiff was placed on restricted duty.  During that period, the plaintiff received his regular Bus Operator pay at the rate he was earning when he was placed on restricted duty.  At the arbitration the plaintiff was represented by his Union representatives and the Union's lawyer.  All parties consented to the arbitration.  All issues were presented.  Evidence was submitted.  Arguments were made.  The arbitrator reached his conclusions.  The plaintiff received his check in August 2016, in accordance with the arbitration.  He cashed it without reservation.  Copies of the arbitrator's decision, the employer's calculations, and check are annexed to "Defendants' First Supplemental Initial Disclosures," filed with the Court on January 6, 2017, (Exhibit E).

The plaintiff and his representatives—again, he was represented by the union and its counsel—chose to proceed to arbitration to address plaintiff's lost PAY claim. He, his representatives, and the defendants all agreed that the findings and determination of the arbitrator would bring final resolution to this matter. Now, plaintiff, who never contested the arbitration or reserved his rights in any manner whatsoever, attempts to get two bites of the apple, in spite of having already cashed the check for the damages he claims here.

To permit a party to ignore the finality of such arbitration proceedings (that were agreed upon by him, his lawyers, his union, and his employer), is to open the floodgates to any employees who want to ignore their agreement. Without exaggeration, if this Court over-rides the arbitrator's findings, it would negate the purpose of such arbitrations and upend the collective bargaining disciplinary and grievance process of one of the largest public transportation companies in the United States. There would be no finality to any such proceedings hereinafter. Anyone and everyone could ignore the outcome of the arbitrations and resurrect their claims in this Court while ignoring the proper avenue for relief when one is dissatisfied with a determination, which is to proceed to a state court Article 78 proceeding—in essence, to appeal the arbitrator's award. But the plaintiff in this case elected not to do so. Neither employees nor employers, or for that matter, the taxpayers of this state, should be subjected to the kind of gamesmanship like that shown here, which is akin to forum shopping and renders such agreed-upon final and binding arbitration processes throughout the state to be un-final and non-binding. The plaintiff, who commenced this suit in December 2015, appeared for the arbitrations on the same subject matter in March, May and July 2016, cashing his check without reservation in August 2016.

## CONCLUSION

The First Amended Complaint should be dismissed, in its entirety and with prejudice, pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that it fails to state a claim for age or disability discrimination under the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and New York City Human Rights Law N.Y.C. Admin. Code §§8-101 *et seq.*, (NYCHRL). This Court must dismiss the federal claims and should decline to exercise supplemental jurisdiction over the remaining state claims

Dated: March 17, 2017

Respectfully submitted,

Paige Ann Evans
General Counsel
MTA Bus Company

By: Thomas J. Deas
Deputy General Counsel
Attorney for the Defendant
2 Broadway, 30th Floor
New York, New York   10004
(646)252-4359