UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
BRIAN THRANE

               Plaintiff,

  -against-

METROPOLITAN
TRANSPORTATION AUTHORITY and
MTA BUS COMPANY,

               Defendants.
-------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1: 15-cv-7418 (FB)(LB)

*Appearances:*
*For the Plaintiff*:
WALKER G. HARMAN, ESQ.
The Harman Firm, LLP
381 Park Avenue South, Suite 1220
New York, New York 10016

*For the Defendants*:
GABRIELLA PALENCIA, ESQ.
Office of the General Counsel
MTA Bus Company
2 Broadway, D21.71
New York, New York 10004

**BLOCK, Senior District Judge:**

    Plaintiff Brian Thrane, a New York City bus driver, was temporarily removed from his bus driving duties after experiencing a dizzy spell and being hospitalized. He claims that his employer, Defendants Metropolitan Transportation Authority and MTA Bus Company (collectively "the MTA"), discriminated against him because of a perceived disability in violation of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"); discriminated against him because of his age in violation of

1

the Age Discrimination in Employment Act of 1967 ("ADEA") and the NYCHRL; and retaliated against him in violation of the ADA and the NYCHRL. The MTA moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, its motion is denied.

I

The following facts, which are taken from the parties' Rule 56.1 statements and supporting documentation, are undisputed unless otherwise noted. Where disputed, they are presented in the light most favorable to Thrane. *See, e.g,. Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Thrane, who is currently 65, began working as a bus driver for the MTA in 2007. On or about April 16, 2015, he experienced dizziness and leg weakness during a shift. He ended his shift early and went to the hospital, where he stayed overnight. Thrane's hospital records state that the admitting diagnosis was transient cerebral ischemia, also called a transient ischemic attack ("TIA"). The hospital records also note that he was told that his symptoms were suspicious of TIA and that he would need to be cleared to return to work by his primary care physician and neurologist. However, one of the doctors at the hospital noted that it was probable that Thrane's symptoms were related to his chronic neck issues.

After being released from the hospital, Thrane got medical clearance from several doctors, including three neurologists, to return to work as a bus driver.

However, the MTA asserts that its policy after a driver has been hospitalized is to have their office of Occupational Health Services medically assess and approve the driver. Therefore, Thrane saw OHS doctor Nicole Esquenet on May 5, 2015. At that appointment, where Thrane claims she did not examine him but merely looked at the paperwork he provided, Dr. Esquenet requested additional medical documentation to be reviewed at another appointment. Thrane also claims that Dr. Esquenet said that she could do whatever she wanted with his file because he was "getting up there in age" and "lucky to work at all." Thrane saw Dr. Esquenet twice more, but she never cleared him for work.[1]

The MTA then had Dr. Arthur Weiss, a neurologist, examine Thrane on May 18, 2015. Dr. Weiss noted that Thrane could return to driving his bus route, though the possibility of a TIA could not be ruled out. The next day Dr. Weiss added an addendum noting that, after having received additional hospital records, it appeared that Thrane had experienced a TIA. On June 8, 2015, Dr. Weiss added another addendum stating that after receiving the MTA's medical standards for bus drivers, it appeared that a TIA was a disqualifying condition for a bus driver and that Thrane was not fit for the position. Thrane then began to work as a cleaner for the MTA.

---

[1] Thrane's declaration seems to say that Dr. Esquenet examined him—rather than merely reviewed his medical documentation—at least once, on May 28, 2015.

On July 24, 2015, Thrane filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging age and disability discrimination. He also filed a grievance seeking reinstatement as a bus driver in accordance with his union's collective bargaining agreement. In March 2016, an arbitrator held that, although an independent medical examination had concluded that Thrane was able to work as a bus driver, the MTA could have 30 days to obtain additional information concerning Thrane's medical condition. However, because Thrane was then presenting symptoms of Lyme disease, his reinstatement was delayed until his treating doctor cleared him. He began working as a bus driver again on May 24, 2016, and the arbitrator awarded him back pay for the period of time that he was working as a cleaner.

## II

A court may grant summary judgment only if "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Disability Discrimination Claims[2]

The burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), governs employment discrimination claims brought under the ADA. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Under that framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.* (citation omitted).

A plaintiff can make a prima facie case under the ADA by establishing, by a preponderance of the evidence, that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Id.* Alternatively—rather than showing at step two that he was disabled—a plaintiff can show that the employer regarded him as disabled. *See Hilton v. Wright*, 673 F.3d 120, 128 (2d Cir. 2012).

---

[2] Because disability discrimination claims under the NYCHRL require the same elements as claims under the ADA, the Court analyzes Thrane's disability discrimination claims by examining only the ADA's elements. *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010).

5

As a defense to an ADA discrimination claim, an employer can establish that a plaintiff posed a "direct threat," meaning a "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Sista*, 445 F.3d at 170. That defense requires an "individualized assessment of the employee's present ability to safely perform the essential functions of the job . . . based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id.* (quoting 29 C.F.R. § 1630.2(r)). The assessment should consider factors including "(1) [t]he duration of the risk; (2)[t]he nature and severity of the potential harm; (3)[t]he likelihood that the potential harm will occur; and (4)[t]he imminence of the potential harm." *Sista*, 445 F.3d at 170 (quoting 29 C.F.R. § 1630.2(r)).

Here, the MTA argues that it did not discriminate against Thrane by temporarily reassigning him as a cleaner because he posed a direct threat to the public's safety due to his diagnosis of TIA. Thrane contests that he was conclusively diagnosed with TIA and challenges the methods by which the MTA determined that he was unfit to drive his bus route. Instead, he claims, he was cleared for bus driving by multiple doctors, but the MTA still regarded him as disabled and discriminated against him.

Because there are issues of fact here surrounding whether the OHS's assessment of Thrane sufficiently involved consideration of the necessary factors,

6

such as the duration of the risk, the MTA has not demonstrated that it is entitled to summary judgment. *See Simms v. City of New York*, 160 F. Supp. 2d 398, 407 (E.D.N.Y. 2001) ("As there is significant disagreement between the parties as to both the adequacy and result of Defendants' assessment of Plaintiff's qualifications, summary judgment cannot be granted."). Though, as the MTA argues, it is entitled to set rigorous safety standards for its bus drivers, it must implement those standards in accordance with the ADA and conduct an individualized assessment considering the required factors. Accordingly, the defendants have not shown that they are entitled to summary judgment on Thrane's ADA claim.

### B. Age Discrimination Claims[3]

The *McDonnell Douglas* framework likewise applies to ADEA claims. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012). To establish a prima facie case under the ADEA, a plaintiff must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Id.* (citation omitted).

---

[3] Because it is easier to establish a case under the NYCHRL than under the ADEA, the Court analyzes only whether the MTA has established that it is entitled to summary judgment on Thrane's ADEA claim. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)

Here, there is a genuine issue of material fact as to whether the MTA discriminated against Thrane under the ADEA. If Thrane is successful in establishing that he was qualified to work as a bus driver, despite his hospital visit, he may be able to show that he was discriminated against because of his age. Dr. Esquenet's alleged statement that she could do whatever she wanted with Thrane's file because he was "getting up there in age" and "lucky to work at all" could allow a jury to infer that the MTA had a discriminatory motivation in removing him from his position as a bus driver. Thrane Decl. ¶35. Accordingly, the MTA is not entitled to summary judgment on Thrane's age discrimination claims.

### C. Retaliation Claims

Retaliation claims under the ADA and NYCHRL are also analyzed under the *McDonnell Douglas* framework. *Kemp v. Metro-N. R.R.*, No. 04 CIV. 9926 (RWS), 2007 WL 1741256, at *16 (S.D.N.Y. June 14, 2007), *aff'd,* 316 F. App'x 25 (2d Cir. 2009). To establish a prima facie case of retaliation, a plaintiff must show that: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

Here, the MTA argues that Thrane cannot establish a prima facie case for retaliation because his protected activity—filing a charge with the EEOC—took place after he was removed from his position as a bus driver and assigned to cleaning. But, as Thrane points out, the MTA continued to refuse to reinstate him after he filed the EEOC charge. That can constitute and adverse employment action. See *Wanamaker v. Town of Westport Bd. of Education*, 11 F.Supp.3d 51, 56 (D.C.T. Mar. 27, 2014); *Heneghan v. New York City Admin for Children's Services, No*. CV-03-2992(BMC)(LB), 2006 WL 2620430 at *6 (E.D.N.Y. Sep. 12, 2006). The MTA's argument that failing to reinstate Thrane was just maintaining the status quo is unavailing because Thrane continued to contest his removal and the MTA continued to decide that he was not fit for reinstatement.

**IT IS SO ORDERED.**

          /S/ Frederic Block_____
          FREDERIC BLOCK
          Senior United States District Judge

July 26, 2019
Brooklyn, New York